**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

| | |
|---|---|
| GENAY L. AMERSON | |
| Plaintiff, | Case No. 2:24-cv-01589-RFB-EJY |
| v. | **DISMISSAL ORDER** |
| LAS VEGAS COLLEGE, *et al.*, | |
| Defendants. | |

Throughout the course of this litigation, Plaintiff Genay L. Amerson has repeatedly attempted to engage in *ex parte*—or otherwise improper—communications with this Court. Consequently, on September 9, 2025, the Court warned Ms. Amerson that her conduct was inappropriate; furthermore, the Court advised Ms. Amerson that further attempts to improperly contact—or inappropriately interact with—Court personnel could result in case-dispositive sanctions. See ECF No. 159 (minute order) ("If Plaintiff seeks to contact chambers again in violation of this order, the Court will impose sanctions. These sanctions can include . . . case-dispositive sanctions."). Since then, Ms. Amerson has ignored the Court's warning. Instead, she has incessantly attempted to contact Chambers staff, and she has engaged in disrespectful behavior toward Court personnel. Based on Plaintiff's own actions, the Court finds that dismissal is appropriate at this time.

## I.    BACKGROUND

Initially, the Court briefly outlines some of Plaintiff's attempts to engage in *ex parte* communications in spite of the Court's September 9, 2025, Order.

On Friday, September 26, 2025, Ms. Amerson called Chambers to demand the expedited

consideration of one of her motions. See ECF No. 186 at 4. As is customary, Ms. Amerson was told that her motion was pending before the Court and that it would be reviewed in due course. Dissatisfied, Ms. Amerson re-dialed. Once again, she was told that her motion would be reviewed in due course; furthermore, Ms. Amerson was also advised that Chambers could not engage in *ex parte* communications with her. Ms. Amerson covertly recorded this conversation in spite of Nevada law. See ECF No. 186; see also Nev Rev. Stat. Ann. § 200.650 (West 2025).

On December 29, 2025, Ms. Amerson approached the Clerk of Court's office at the Lloyd D. George United States Courthouse to submit evidence. While there, Ms. Amerson argued with court staff and recorded her interactions within the building. Eventually, she demanded to speak with the Clerk's supervisor. Ms. Amerson was escorted from the building by the United States Marshals Service.

From December 29, 2025, through December 30, 2025, Ms. Amerson called Chambers a total of *thirteen times*. Amongst other things, she demanded that this Court "do its job." Since then, Ms. Amerson has continued to contact Chambers on a regular, *ex parte* basis with an ever-growing slew of demands. Despite repeated warnings, she has continued to call Chambers on an almost daily basis for the past month-and-a-half.

The Court notes that these incidents are merely a sampling of Ms. Amerson's attempts to engage in *ex parte* communications with Chambers.

## II.    LEGAL STANDARD

This Court has the inherent authority to dismiss a case when a plaintiff violates its order(s). See Thompson v. Hous. Auth. of L.A., 782 F.2d 829, 831 (9th Cir. 1986) ("We have repeatedly upheld . . . dismissal for failure to comply with . . . court orders.") (citations omitted). "Federal courts possess certain 'inherent powers,' not conferred by rule or statute, 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" Am. Unites for Kids v. Rousseau, 985 F.3d 1075, 1088 (9th Cir. 2021) (quoting Goodyear Tire & Rubber Co. v. Haeger, 581 U.S. 101, 107 (2017)). Through these powers, district courts have "the ability to fashion an appropriate sanction for conduct which abuses the judicial process." Goodyear Tire & Rubber Co.,

581 U.S. at 107 (citation and quotation marks omitted). For instance, a "district court may, among other things, *dismiss a case in its entirety*, bar witnesses, exclude other evidence, award attorneys' fees, or assess fines." Am. Unites for Kids, 985 F.3d at 1088 (citation omitted) (emphasis added).

Of course, this Court's inherent powers are not limitless; they do not supply *carte blanche* authority to sanction parties. Instead, these powers are subject to judicial constraints, which have been crafted by the federal courts over time. First and foremost, a district court must find that a party willfully violated its order(s), or acted in bad faith, to sanction the party based on the court's inherent powers. See id. at 1090 (citation omitted).

Assuming that a district court makes this threshold finding, it should not dismiss the party's case unless the case presents "*extreme circumstances*" that satisfy certain criteria established by the Ninth Circuit Court of Appeals. See Hernandez v. City of El Monte, 138 F.3d 393, 399 (9th Cir. 1998). Specifically, this Court must consider five factors ("Dispositive Sanction Factors") "before resorting to the penalty of dismissal: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." Id. (citation and quotation marks omitted); see also Thompson, 782 F.2d at 831. When a district court is considering a *sua sponte* dismissal, it must place "special focus on considerations relating to the fifth [ ] factor." Hernandez, 138 F.3d at 399 (citation omitted).

### III.    DISCUSSION

As a threshold matter, the Court finds that Ms. Amerson has willfully violated its prior order because she has continuously contacted Chambers in an *ex parte*—and improper—manner. See ECF No. 159 (minute order expressly prohibiting Plaintiff from engaging in *ex parte* communications with Chambers staff).

Next, the Court concludes that Ms. Amerson's case should be dismissed because all but one of the Dispositive Sanction Factors weigh in favor of dismissal.

First, the Court finds that the public's interest in the expeditious resolution of this litigation and the Court's need to manage its own docket both weigh in favor of dismissal. See Adriana Int'l

Corp. v. Thoeren, 913 F.2d 1406, 1412 (9th Cir. 1990) ("Where a court order is violated, [these] first two factors support sanctions . . . ."). After all, Ms. Amerson's incessant *ex parte* communications with Chambers squander court resources, delay the swift resolution of her case, and disrupt this Court's ability to manage its own affairs.

Similarly, the Court finds that the risk of prejudice to Defendants also weighs in favor of dismissal. "In determining whether a defendant has been prejudiced, [this Court] examines whether the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case." Malone v. U.S. Postal Serv., 833 F.2d 128, 131 (9th Cir. 1987) (citation omitted); see also Hernandez v. City of El Monte, 138 F.3d 393, 399 (9th Cir. 1998) (same). Ms. Amerson's course of conduct undoubtedly threatens to interfere with the disposition of this case. Put simply, *ex parte* communications are almost always inappropriate because they undermine the apparent, and sometimes actual, neutrality of a tribunal. See Guenther v. C.I.R., 889 F.2d 882, 884 (9th Cir. 1989) (citations omitted) [hereinafter, "Guenther I"]. Accordingly, they can create a constitutional violation that invalidates a court's proceedings. See Guenther v. C.I.R., 939 F.2d 758, 760–62 (9th Cir. 1991) (citations omitted) [hereinafter, "Guenther II"]. Therefore, Ms. Amerson's ongoing attempts to engage in *ex parte* contact with this Court threaten to implode these proceedings, even though Defendants have spent well over a year litigating this case.

The Court also finds that less drastic sanctions are not available in this case, such that the fifth factor weighs in favor of dismissal. To recap, the Court has already advised Ms. Amerson that *ex parte* communications are wholly inappropriate. The Court has already ordered Ms. Amerson to stop attempting to communicate with Chambers in an *ex parte* fashion. And the Court has already warned Ms. Amerson that further attempts to contact Chambers outside of the docket would result in severe, case-dispositive sanctions. Nonetheless, Ms. Amerson has continuously attempted to engage in *ex parte* communications with this Court. At this juncture, the Court has few options left. It could enter a second order that, once again, prohibits Ms. Amerson from contacting Chambers outside of the docket. But the reality of repeating an ignored order is that it only delays the inevitable. Since this Court does not have to exhaust every conceivable sanction before finally dismissing a case, the Court concludes that there are no "possible and meaningful

alternatives" to dismissal. See Henderson v. Duncan, 779 F.2d 1421, 1424 (9th Cir. 1986) (citation omitted).

Finally, although the public policy favoring the disposition of cases on their merits cuts against dismissal, the Court finds that it is greatly outweighed by the factors favoring dismissal.

In sum, Ms. Amerson has willfully violated this Court's prior order. The Dispositive Sanction Factors weigh in favor of dismissal. Accordingly, the Court invokes its inherent powers to dismiss Ms. Amerson's case.

## IV.    CONCLUSION

Therefore, **IT IS HEREBY ORDERED** this case is **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** all pending motions (ECF Nos. 109, 158, 160, 162, 164, 165, 166, 168, 174, 176, 177, 180, 188, 208, 218, 223, 224, 227, 239, 242) are **DENIED** as moot.

The Clerk of Court is kindly directed to enter judgment accordingly and close this case. No other documents may be filed in this now closed case.

**DATED:** February 9, 2026.

_____

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**